# THE STATE OF NEW HAMPSHIRE

# SUPREME COURT

**In Case No. 2015-0122, <u>In re T.L.</u>, the court on June 19, 2015, issued the following order:**

Having considered the brief, the memorandum of law, and the record submitted on appeal, we conclude that oral argument is unnecessary in this case. <u>See</u> <u>Sup. Ct. R.</u> 18(1). We affirm.

The mother of T.L., a minor child, appeals an order of the Circuit Court (<u>Lemire</u>, J.) establishing a guardianship of the child's person, over the mother's objection, in favor of the child's maternal grandmother. <u>See</u> RSA 463:8, III(b) (Supp. 2014). The mother argues that the evidence does not support the trial court's finding, by clear and convincing evidence, that the best interests of the child require substitution or supplementation of parental care and supervision to provide for the child's essential physical and safety needs or to prevent specific, significant psychological harm to her. <u>Id</u>.

The trial court has wide discretion in guardianship matters. <u>See</u> <u>In re Jesse F.</u>, 143 N.H. 192, 193 (1998) (stating that probate court has wide discretion in determination of guardianship matters); <u>see also</u> RSA 463:4 (2004) (granting probate court jurisdiction over appointment of guardian of a minor child); RSA 490-D:2, VIII (Supp. 2014) (transferring jurisdiction over matters concerning the guardianship of the person of a minor to the judicial branch family division); RSA 490-F:3 (Supp. 2014) (granting the circuit court with the jurisdiction previously conferred upon the judicial branch family division and probate courts). We will not disturb its decision absent a clear showing that it unsustainably exercised its discretion. <u>See</u> <u>Jesse F.</u>, 143 N.H. at 193; <u>see also</u> <u>State v. Lambert</u>, 147 N.H. 295, 296 (2001) (explaining unsustainable exercise of discretion standard).

The trial court's findings of fact are final unless they are so plainly erroneous that they could not have been reasonably made. <u>See</u> <u>Jesse F.</u>, 143 N.H. at 193. We will uphold its findings of fact if a reasonable fact finder could have made them. <u>See</u> <u>id</u>. at 194. We will uphold its ultimate ruling if it is supported by the evidence and not erroneous as a matter of law. <u>Id</u>.

In order to establish a guardianship of the person of a minor child over the objection of the child's parent, the petitioner must establish, by clear and convincing evidence, that "the best interests of the minor require substitution or supplementation of parental care and supervision to provide for the essential physical and safety needs of the minor or to prevent specific, significant

psychological harm to the minor." RSA 463:8, III. Satisfying this standard overcomes the constitutional presumption that a fit parent acts in her child's best interest. In re Guardianship of Nicholas P., 162 N.H. 199, 205 (2011).

In this case, a clinical psychologist diagnosed the mother with "a delusional disorder which continues to revolve around prominent olfactory hallucinations and associated delusional thoughts." The evidence establishes that, prior to the petition, the mother's psychological condition caused her to sell her house, to move the child in and out of several apartments and hotel rooms, to either discard or place in storage the household furniture and the child's clothing and toys, and to move in with the family of a friend, essentially becoming homeless. The mother admitted that, because she had no furniture in the apartments in which she and the child had lived, she and the child ate on the floor. During the sixty-one days that the child was enrolled in a Sacramento, California kindergarten between August and November of 2013, she was absent nine days and tardy twenty-three days. The child's school complained that her excessive tardiness disrupted the classroom and impaired her progress. The school also noted that the child had not had three immunizations that were required by California law.

In November 2013, the mother brought the child from California to New Hampshire to spend Thanksgiving with the grandmother. The child was dressed only in a light, short-sleeved summer dress, and the mother had packed her no coat or other clothing for the trip. The mother had brought with her a large suitcase that contained only the child's birth certificate and a few bills. The mother was involuntarily admitted, at that time, to New Hampshire Hospital on an emergency basis, see RSA 135-C:27 (2015), and upon her discharge, when she learned that the grandmother had obtained an ex parte guardianship of the child and that she could not return the child to California, the mother struck the grandmother in the child's presence.

The clinical psychologist, who performed a parenting evaluation of the mother, observed that from December 2013 to the January 2, 2015 date of the report, the mother had "maintained stability in her job and in the apartment she has maintained without any further moves." He further observed, however, that she continued "to notice and be concerned about objectionable smells," and that although she appeared to have been "only minimally affected by delusions and olfactory hallucinations of late," she tended "to minimize and deny her mental health issues and diagnosis" and could not "be relied upon to have self-awareness and to ask for help should her symptoms increase or should she need [future] assistance and intervention." Moreover, although psychological testing showed that the mother "displays good contact with reality and is able to think logically and coherently (at least most of the time)," it also revealed that she "tends to function in the world in . . . rather simplistic, black and white terms, in that she is likely to frequently overlook the subtle nuances of social and interpersonal situations as well as the more complex

2

aspects of functioning in the world." The psychologist ultimately recommended that "[s]hould the child be returned to mother's care and custody," some sort of "arrangement be ordered to monitor the child's situation with mother on an ongoing basis, perhaps through the appointment of minor's counsel or a parenting coordinator in California." (Emphasis added.) He further suggested that any return of the child to the mother's custody be conditioned upon the mother "maintain[ing] regular contact with a psychiatrist and cooperat[ing] with any medications or other treatment recommended by the psychiatrist."

Upon this record, the trial court's decision was neither unsupported by the evidence nor erroneous as a matter of law. Jesse F., 143 N.H. at 194. As the trial court aptly noted, the psychologist's recommendations necessarily imply that, at the very least, "supplementation of Mother's care and supervision of" the child was required. In light of the evidence of what had occurred in 2013, that the mother continued to be affected by olfactory hallucinations and delusions, and that she lacked self-awareness concerning her mental illness, the trial court reasonably could have found, by clear and convincing evidence, that substitution or supplementation of parental care and supervision was necessary to provide for the child's essential physical and safety needs. Because the evidence supports the trial court's finding that substitution or supplementation of the mother's care and supervision was necessary to provide for the child's essential physical and safety needs, and because RSA 463:8, III(b), by its express terms, requires a finding that a guardianship is required either to provide for the child's essential physical and safety needs or to prevent significant psychological harm, we need not address whether the evidence supports a finding that the guardianship is required to prevent psychological harm to the child.

We note that the mother does not argue, as part of this appeal, that alternative arrangements for the supplementation of parental care and supervision, consistent with the psychologist's recommendations, should occur in California.

Affirmed.

Dalianis, C.J., and Hicks, Conboy, Lynn, and Bassett, JJ., concurred.

**Eileen Fox,
Clerk**

3